IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGINA GUITIERREZ,

    Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.
                                 /

No. C 09-02323 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this social security appeal, plaintiff Georgina Gutierrez appeals the final decision of the Commissioner of Social Security denying her claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. 401 *et seq.*[1] As explained herein, the administrative law judge exercised proper discretion in weighing the evidence in the record and his conclusions were supported by substantial evidence and free of legal error. Specifically, this order finds that the ALJ properly developed the record, properly weighed the credibility of plaintiff's treating chiropractor, properly weighed the credibility of plaintiff's subjective testimony regarding her impairments and symptoms, and properly made and applied a residual functional capacity

---

[1] Plaintiff's name is spelled "Gutierrez" and "Gutierrez Ortiz" throughout the administrative record. Her name appears as "Guitierrez," however, in the caption of the appeal. This order will use the spelling "Gutierrez" as it is the most common spelling of plaintiff's name throughout the record.

determination in deciding that plaintiff was not disabled under the Social Security Act. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

**STATEMENT**

### 1. PROCEDURAL HISTORY.

On September 9, 2006, plaintiff Georgina Gutierrez applied for disability insurance benefits and supplemental security income, alleging she was unable to work since July 28, 2005, due to a disabling condition (AR 127). Her application was denied both initially and upon reconsideration (*id*. at 80, 89). An administrative hearing was timely requested and held before ALJ Robert Wenten on May 20, 2008 (*id.* at 29–75, 98). In his decision rendered on June 25, 2008, ALJ Wenten found that plaintiff was not disabled as defined by the Social Security Act (*id*. at 24). Plaintiff thereafter requested administrative review, which was denied by the Appeals Council (*id*. at 1, 6). The instant appeal was filed pursuant to 42 U.S.C. 405(g). After two continuances of the briefing schedule due to the illness of plaintiff's counsel, the parties filed cross-motions for summary judgment (Dkt. Nos. 15, 17, 18, and 20). This order addresses those motions.

### 2. TESTIMONY AT THE ADMINISTRATIVE HEARING.

At the hearing held before ALJ Wenten, plaintiff was examined by both the ALJ and her non-attorney representative, Gioconda Egan. Plaintiff testified that she last worked on March 30, 2006, as an in-home care worker for her mother (AR 36). It was on that date that plaintiff alleged she was injured when her mother fell down the stairs and landed on her, injuring her back (*id.* at 18, 50). The date of March 30, 2006, became the amended onset date for plaintiff's claimed disability.[2] Ms. Gutierrez then testified about her other past employment, which included work as

---

[2] In her initial application for social security benefits, plaintiff alleged that she was disabled as of July 28, 2005 (*see, e.g,*, AR 120). When asked at the hearing why that date had been initially chosen, plaintiff could not remember.

2

1  a kitchen aide, receptionist to a lawyer, mail handler, and machine operator at a company

2  manufacturing cans (*id*. at 39, 41–43).

3  With respect to her current capacity to work, plaintiff stated at the hearing (*id.* at 43):

> Right now I can't [work] because my back is really messed up, it's hurting. My spine is, it's in pain all the time. My legs, my nerve and my, my legs and my nerve pain. Really it's messed up. I can't, I could hardly walk and when I walk my legs hurt. My back is, after the surgery it has gotten worse.

7  When asked if she had any other medical problems besides her back, plaintiff testified that her

8  neck was "decompressed," her hands went numb on both sides, and her legs hurt especially when

9  walking and sitting for extended periods of time (*id.* at 47).

10  Plaintiff further testified that she took a pain medication, Gluphenage, as well as a muscle

11  relaxant to help alleviate her pain symptoms (*id.* at 48). She also stated that she used a bone

12  density stimulator almost every day as prescribed by Dr. Christopher P. Ames, a neurosurgeon

13  who performed a surgical procedure on her back in July 2006. Since her surgery, plaintiff alleged

14  that she required use of a cane every day (*id.* at 45, 47).

15  With respect to her ability to stand and sit for periods of time, plaintiff testified that she

16  could stand for half an hour before having to sit down (*id*. at 51). While plaintiff stated that she

17  could sit for an hour, she clarified that she would need to stand up and stretch her legs after about

18  20 minutes of sitting (*id*. at 52). When asked how many blocks she could walk, plaintiff answered

19  "a minimum of two blocks" after which she would need to sit down because "[she got] very tired

20  and [she got] very depressed" (*id*. at 53). While plaintiff testified that she was able to lift an eight-

21  pound carton of milk, because of "numbness" in her hands, she claimed that she had difficult doing

22  repetitive work (*id*. at 53, 55). According to plaintiff, all of these limitations have been present

23  since the date of her work-related injury on March 3, 2006 (*id*. at 55). When asked by her personal

24  representative if the pain interfered with her ability to concentrate, plaintiff answered "Yes, it

25  does. I can't focus that much. I mean, I could, I understand stuff but I do get kind of anxious

26  because of the pain" (*ibid*.). When asked to describe her pain on a scale of one to ten, ten being

27  the worst pain, plaintiff stated that "the majority of the time it's nine, ten" (*id*. at 56).

3

1    With respect to the surgical procedure she underwent on July 28, 2006, plaintiff testified
2 that Dr. Ames, her neurosurgeon, was initially going to operate on her neck but — due to
3 increasing problems with her back — decided instead to operate on her spine (*id.* at 53). Prior to
4 this operation, plaintiff stated that she had received four injections in her spine to alleviate her pain
5 symptoms, but the effect lasted only for about a month. Thereafter, the July 2006 surgical
6 procedure was performed (*id.* at 57). After the surgery, plaintiff testified that her pain worsened
7 rather than improved (*id.* at 56). She did not, however, undergo any physical therapy to help with
8 her symptoms (*id.* at 57).

9    Finally, when asked by ALJ Wenten whether she could go to work everyday, plaintiff
10 answered: "Really I don't know. Probably just answering the phones probably, I don't know, but I
11 can't sit down for a long time" (*id.* at 59).

12    Following Ms. Gutierrez's testimony, Robert Rashkey, a vocational expert, testified before
13 the ALJ as to plaintiff's employment history and ability to perform other work. In questioning Mr.
14 Rashkey, ALJ Wenten focused on plaintiff's residual functional capacity ("RFC") and plaintiff's
15 hypothetical ability to acquire and maintain gainful employment (*id.* at 63). The ALJ noted during
16 this portion of the hearing that he did not have any *current* medical treatment records for Ms.
17 Gutierrez and that the last medical examination plaintiff talked about was with Dr. James B. Stark,
18 a physician at UCSF Medical Center, nine months prior to the hearing. With respect to this UCSF
19 medical exam performed by Dr. Stark in August 2007, the ALJ further noted that there was a
20 problem with the faxed copy of the report in the record; it was missing the very bottom of every
21 page (*ibid.*).

22    In his examination of Vocational Expert Rashkey, the ALJ first asked (*id.* at 64):

23 > If the claimant were limited to work which was light in terms of its weight requirements but required the ability to change from sitting to
24 > standing during the course of the day, not in five-minute intervals but occasionally throughout the day, sit/stand option, would she have
25 > been able to do any of the work she has done in the past?

26 Mr. Rashkey answered that she would not be able do perform any of her past work (*ibid.*). He did,
27 however, list skills from her past work that would be transferrable to new jobs. These included

28

4

customer service skills, documentation skills, inventory control skills, rudimentary accounting skills, math skills, and some writing skills (*id.* at 66). Based on those transferrable skills and the limitations set forth in Ms. Gutierrez's RFC hypothetical, the ALJ then asked Mr. Rashkey for the job titles that plaintiff would be able to perform (*id*. at 68). The vocational expert listed several semi-sedentary jobs including sales and counter clerk, laundry pricing clerk, collections clerk, credit authorizer, and quality control clerk. As to "light jobs," Mr. Rashkey estimated 3,000 jobs in the bay area and 200,000 nationwide (*id*. at 69). In addition, Mr. Rashkey estimated the number of sedentary jobs at 500 in the bay area and 35,000 nationally (*id*. at 71).

The hearing concluded with plaintiff's representative posing two additional hypotheticals to the vocational expert. *First*, Ms. Gutierrez's representative asked Mr. Rashkey: If Ms. Gutierrez "has to use a cane at all times and is in pain at a level of she said nine to ten, would she be able to do the jobs that you described?" (*id*. at 72). Mr. Rashkey answered that use of a cane would not exclude the jobs listed, but would probably exclude some of the jobs at an erosional rate of 50% (*ibid*.). *Second*, plaintiff's representative asked Mr. Rashkey (*id*. at 73):

> The pain interferes with the concentration at all times that she cannot focus. Would that pose a problem with the jobs he has cited that she's saying that she cannot concentrate, she cannot focus?

In response, Mr. Rashkey stated that where the pain impacts the ability to perform, an employee will probably be off production pace by 15 percent. With respect to employability, Mr. Rashkey explained "I think it starts falling off pretty rapidly at 10 percent [off production pace] and by the time they reach 15 there really is no work" (*ibid*.).

### 3. MEDICAL EVIDENCE.

The ALJ's written decision provided a detailed summary of the medical evidence in the record (*id*. at 18–21). The significant findings of plaintiff's examining and treating physicians were are summarized below.

In February 2006, *prior to* the industrial accident that allegedly occurred on March 30 of that year (which is the alleged disability onset date), plaintiff was examined by Dr. Eric L. Johnson

5

for a second opinion regarding the possibility that pain she had been experiencing in her legs and arms could be attributed to peripheral vascular disease. During the examination, plaintiff described her symptoms as leg pain which goes up her back (*id*. at 238). Dr. Johnson determined that plaintiff's pain was nonvascular (*id*. at 239).

Later that year, after the alleged industrial accident on March 30, 2006, had occurred, Dr. Ames — plaintiff's neurosurgeon — diagnosed plaintiff with "multilevel degenerative disease with severe foraminal impingement at L4-L5 and L5-S1 secondary to disk herniation and foraminal stenoisis" (*id*. at 255). After conservative treatments were attempted, plaintiff underwent a more aggressive surgical procedure — a posterior spinal fusion with instrumentation — in July 2006. In a follow-up meeting with Dr. Ames in September 2006, the doctor noted that plaintiff's back was feeling much better. While plaintiff continued to complain of pain in her left leg, Dr. Ames believed it was the result of postoperative neurapraxia which would likely abate in the future (*id*. at 316). At that time, plaintiff also complained of depression and anxiety. For these symptoms, Dr. Ames referred plaintiff to the UCSF Psychiatric Unit (*ibid*.).

Plaintiff underwent a psychological consultive exam in November 2006 with Dr. Paul Martin. Dr. Martin found that, from a psychological standpoint, plaintiff's work-related abilities were unimpaired except in her ability to withstand the stress of a routine workday and her ability to adapt to changes, hazards, or stressors in the workplace, which he determined to be only "mildly impaired" (*id*. at 277). In a *physical* RFC assessment also conducted in November 2006, a state agency medical reviewer determined — after assessing plaintiff's exertional, postural, and other limitations on a function-by-function basis — that plaintiff should be able to do light-level work (*id*. at 289–97). The reviewer did note, however, that plaintiff was limited in the lower extremities and should refrain from constant pedal work (*id*. at 290).

Nine months later, in August 2007, plaintiff was examined by Dr. James Stark for an agreed medical examination. While the very bottom portion of Dr. Stark's medical report (as provided to the ALJ) was cut off due to a faxing error, the vast majority of his findings were still ascertainable. According to Dr. Stark's report, plaintiff reported lower back pain radiating to her

6

1  left foot as well as neck pain radiating to her left arm (*id*. at 383). When asked by Dr. Stark how
2  long she had been experiencing these symptoms, plaintiff denied that the symptoms existed prior
3  to the accident that allegedly occurred on March 30, 2006. During the examination, plaintiff
4  supposedly demonstrated pain behavior. Dr. Stark's assessment found plaintiff to have status post
5  L4 through S1 posterolateral fusion with transforaminal interlumbar body fusion, residual mild left
6  S1 radiculopthathy, and possible motivational issues (*id*. at 385).

7  Importantly, Dr. Stark also noted that while plaintiff denied experiencing lower back pain
8  prior to her March 30 injury, medical records predating the injury "paint[ed] a completely different
9  picture" and showed multiple entries where plaintiff's lower back pain was documented (*ibid.*).
10 Dr. Stark further stated that MRI scans prior to the alleged injury on March 30, 2006, were not
11 measurably changed from those conducted after March 30, and that certain subjective findings in
12 the examination, "being unreliable in [his] judgment, must be cautiously interpreted" (*id.* at 386).

13 Finally, in February 2008, plaintiff saw Dr. Carol Brodsky, an examining psychiatrist, for a
14 workers' compensation claim. Dr. Brodsky diagnosed plaintiff with a depressive disorder and a
15 pain disorder associated with both psychological factors and a general medical condition (*id.* at
16 380). In rating plaintiff's work function impairments, Dr. Brodsky found: (1) no impairment in
17 her ability to perform simple repetitive tasks and her ability to understand and follow instructions;
18 (2) minimal impairment in her ability to relate to and influence other people; (3) slight impairment
19 in her ability to maintain an appropriate work pace; and (4) a very slight impairment in her ability
20 to accept and carry out responsibility and to make generalizations, evaluations or decisions without
21 immediate supervision (*id.* at 381).

**ANALYSIS**

**1.   LEGAL STANDARD.**

24 The denial of disability benefits must be upheld if it is supported by substantial evidence
25 and is free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial
26 evidence means "more than a scintilla" but "less than a preponderance." *Smolen v. Chater*, 80
27 F.3d 1273, 1279 (9th Cir. 1996). In other words, there must be "relevant evidence as a reasonable

7

mind might accept as adequate to support a conclusion." *Ibid.*  In applying this standard, a reviewing court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039.  The reviewing court must be mindful, however, that "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld.  *Ibid.*  Furthermore, the reviewing court must always keep in mind that the claimant carries the burden of proving disability.  *Id.* at 1040; *see also* 42 U.S.C. 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").

**2.    THE ALJ'S FIVE-STEP ANALYSIS.**

Social security disability claims are evaluated using a five-step inquiry.  20 C.F.R. 404.1520.  In the first four steps, the ALJ must determine:  (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment(s), (iii) whether the impairment(s) meet or are equivalent to any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing her prior job.  20 C.F.R. 404.1520(a)(4)(i)–(iv).  In the fifth step, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy."  *Andrews*, 53 F.3d at 1040.  If the ALJ chooses to use a vocational expert to assist in determining whether the claimant is capable of making an adjustment to other work, any hypothetical questions asked "must 'set out all of the claimant's impairments.'"  *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (internal citation omitted).  Additionally, the ALJ may use Medical-Vocational Guidelines at step five so long as "they completely and accurately represent a claimant's limitations" and the claimant can "perform the full range of jobs in a given category."  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis removed from original).

In his written decision, ALJ Wenten found at step one of the sequential evaluation process that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date

of March 30, 2006 (*id.* at 16). As such, disability was not precluded on the basis of work activity. This determination is not in dispute. At step two, the ALJ found that the medical evidence established that plaintiff had the following severe impairments: (1) degenerative disc disease and (2) status post L4-S1 fusion with residual mild left S1 radiculopathy (*ibid.*). This particular determination is also not disputed. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments listed in or medically equivalent to one listed in Appendix 1, Subpart P, Regulations No. 4 (*ibid.*). Again, this determination does not appear to be disputed by Ms. Gutierrez.

At step four, the ALJ determined, based upon the medical evidence in the record, that plaintiff had the RFC to perform "light work" except that she needed to be able to change position from sitting to standing occasionally throughout the day. Based upon this determination, the ALJ found that this would preclude Ms. Gutierrez from performing any past relevant work (*id.* at 17–22). At step five, however, the ALJ determined — using both the Medical-Vocational Guidelines and the opinion of the vocational expert — that "[c]onsidering the [c]laimant's age, education, work experience, and [RFC], the [c]laimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy" (*id.* at 22–23). As such, the ALJ found that plaintiff was *not* under a disability at any time through the date of his decision (*ibid.*).

Plaintiff's motion focuses on these last two determinations. Specifically, plaintiff argues that (1) the ALJ and Appeals Council failed to properly develop the record regarding Ms. Gutierrez's physical RFC; (2) the ALJ failed to articulate legitimate reasons for rejecting the RFC opinion of plaintiff's treating chiropractor; (3) the ALJ failed to articulate legitimate, clear and convincing reasons for discrediting plaintiff's testimony regarding her impairments; (4) the ALJ failed to make a proper RFC assessment; and (5) the ALJ failed to pose a legally adequate hypothetical to the vocational expert, Mr. Rashkey.

As explained below, none of these five arguments has merit.

9

### 3. THE ALJ AND APPEALS COUNCIL PROPERLY DEVELOPED THE RECORD.

Plaintiff presents two separate arguments regarding the development of the record. *First*, plaintiff asserts that the ALJ failed to more fully develop the record regarding Ms. Gutierrez's physical impairments by not ordering a physical consultative examination to determine plaintiff's RFC. *Second*, plaintiff argues that the Appeals Council erred in failing to remand the case to the ALJ so that the more recent opinion of her treating physician, Dr. Robert D. Rowley, could be considered (Br. 19). These arguments are addressed in turn.

#### A. The ALJ was not required to order an additional consultative examination.

An ALJ has an independent "duty to fully and fairly develop the record and to assure that [a social security] claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)) (citation and internal quotation marks omitted). The narrow question in the instant appeal is whether this duty *required* the ALJ to order an additional physical consultative examination of Ms. Gutierrez. As explained by the Ninth Circuit in *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001), the Commissioner "has broad latitude in ordering a consultative examination" and "[t]he government is not required to bear the expense of an examination for every claimant." *See* generally 20 C.F.R. 404.1517-1519t, 416.917-919t. The types of cases that "normally require a consultative examination" include those in which "additional evidence needed is not contained in the records of [the claimant's] medical sources," and those involving an "ambiguity or insufficiency in the evidence [that] must be resolved." *Reed*, 270 F.3d at 842 (alterations in original) (citations omitted).

While it is true, as plaintiff points out, that the record before the ALJ did not contain a physical RFC opinion by a treating or examining physician of Ms. Gutierrez, the record *did* contain a properly conducted physical RFC assessment by a state agency medical reviewer (AR 289–304). This is acceptable. Morever, this RFC assessment was not an improper categorical assessment (which would have merely stated whether Ms. Gutierrez could do "light," "medium," or "heavy" work), but a proper function-by-function assessment of plaintiff's physical limitations using a pre-printed form from the Social Security Administration specifically designed for such an

10

assessment (*ibid.*). *See id.* at 843 n.2. ALJ Wenten found that this RFC assessment by the state agency physician was consistent with the medical report of Dr. Stark (and vice-versa), which was the most recent medical report submitted by plaintiff regarding her physical impairments (*id.* at 21, 383–85). At no point during the hearing or in his written decision did the ALJ find or hint that additional evidence was needed in order to make an RFC determination, or that there was an ambiguity or insufficiency in the evidence that had to be resolved. Rather, the ALJ's RFC determination was supported by substantial evidence in the record. As such, the ALJ's duty to order an additional consultative examination was *not* triggered under these circumstances.

Plaintiff's reliance on the Ninth Circuit's decision in *Reed* is misplaced. *First*, no function-by-function RFC assessment was performed on the claimant in *Reed*. Rather, an improper categorical assessment was performed, which meant that the record was entirely devoid of any properly conducted physical RFC examination. *Second*, the ALJ in *Reed* expressly acknowledged *on the record* that a consultative examination would have been appropriate. *See id.* at 843. Despite this acknowledgment, he chose not to order one. Both of these facts were material to the Ninth Circuit's finding that the ALJ in *Reed* had a duty to order a consultative examination to develop the record and erred by failing to do so. By contrast, a proper RFC assessment was conducted and ALJ Wenten never stated or even hinted that a new consultative examination would have been appropriate in the instant case. In sum, the record in the instant appeal is readily distinguishable from the record in *Reed*.

It should be mentioned, however, that ALJ Wenten did expressly note the lack of *recent* medical treatments received by Ms. Gutierrez for her alleged disability (*id.* at 63). The ALJ made these observations both at the hearing and in his written decision (*id.* at 21, 63). This observation, however, was not directed at any perceived "ambiguity or insufficiency in the evidence." Rather, the ALJ highlighted the absence of recent medical treatments to illustrate why "[t]he extreme limitations [plaintiff] describes . . . are not supported by the weight of the evidence" (since the ALJ rightfully expected Ms. Gutierrez to seek continuing medical treatment for her impairments if they were as severe as she represented) and why plaintiff "has not established that she was precluded

11

1  from working for more than 12 months," given that all her medical treatments in the record
2  occurred within a year of the alleged disability onset date (*id.* at 21).³

3        In sum, because the record was neither ambiguous nor insufficient, the ALJ did not commit
4  legal error when he declined to order a second consultative examination of Ms. Gutierrez. Rather,
5  this order finds that ALJ Wenten's findings were clearly supported by substantial evidence in the
6  record — meaning more than a scintilla of relevant evidence as a reasonable mind might accept as
7  adequate to support his conclusion.

### B. The Appeals Council properly declined to remand the case.

9        In situations where there the ALJ has a duty to develop the record, the ALJ can discharge
10  this duty by allowing supplementation of the record after the hearing. *See Tonapetyan*, 242 F.3d at
11  1150 (citation omitted). Here, plaintiff argues that the Appeals Council committed legal error by
12  failing to remand the case to the ALJ so that he could evaluate the medical opinion of a *new*
13  physician, Dr. Robert D. Rowley, who examined Ms. Gutierrez *two months* after the hearing was
14  conducted before ALJ Wenten and *one month* after the ALJ's written decision was issued (Br. 19;
15  Opp. 4–5). This argument also fails.

16        *First*, this order has already found that ALJ Wenten did *not* have a duty to further develop
17  the record. As such, the ALJ was not required to allow supplementation of the record after the
18  hearing (and especially not after his written decision was issued), and the Appeals Council was not
19  required to remand the issue back to the ALJ in light of Dr. Rowley's medical report. *Second*, Dr.
20  Rowley's medical report did not provide a physical RFC assessment of Ms. Gutierrez and did not
21  purport to be retroactive to the time period relevant to the ALJ's disability determination (*see* AR
22  409–12). Both deficiencies are independently fatal to plaintiff's argument.

---

³ This order also notes that ALJ Wenten commented at the hearing that he "was having trouble figuring out an RFC" due to the fact that the bottom portion of Dr. Stark's medical report could not be read (AR 63). In his written decision, however, ALJ Wenten made clear that although "the bottom of each page is missing, [the] report is otherwise extensive" (*id.* at 21). Based upon the portions of the report that were available, ALJ Wenten made his findings. Importantly, plaintiff did *not* argue in her motion that the ALJ should have relied upon a complete version of Dr. Stark's report.

In sum, the Appeals Council was *not* required to remand the matter to the ALJ due to the untimely emergence of Dr. Rowley's medical report, and Dr. Rowley's report — which did not even pertain to the relevant time period — did not create an ambiguity in the record requiring the Commissioner to order a new consultative examination of Ms. Gutierrez. *See Reed*, 270 F.3d at 842. Rather, it appears that plaintiff obtained the medical opinion of Dr. Rowley as a strategic response to the ALJ's written decision.

For these reasons, this order finds that the Appeals Council did *not* err in its decision to deny plaintiff's request to remand the case to the ALJ for further proceedings.

### 4. THE ALJ PROPERLY REJECTED THE RFC OPINION OF PLAINTIFF'S TREATING CHIROPRACTOR.

In his written decision, ALJ Wenten stated the following with respect to a letter submitted by plaintiff's treating chiropractor, Dr. David Lach, who opined that Ms. Gutierrez was "permanently disabled" (*id*. at 20–21) (emphasis added):

> I give little weight to Dr. Lach's opinion for the following reasons. First, the issue of disability is an issue reserved to the Commissioner. 20 CFR §§ 404.1527 and 416.927. Second, Dr. Lach has not identified any significant objective findings to support his conclusions, nor do I find any progress notes showing the extent of his treatment with the Claimant. Finally, Dr. Lach is a chiropractor, a profession which is not an acceptable medical information source under Social Security Regulations. *The opinions of such persons are to be considered, however, and I have done so.* I find them disproportionate, inadequately founded upon a documented treating relationship, and without recited objective or clinical findings to support them.

In her motion, plaintiff argues that the ALJ improperly discredited the opinion of Dr. Lach without stating sufficient grounds to do so. This order disagrees.

*First*, as plaintiff concedes, the determination of disability under the Social Security Act is an ultimate issue reserved to the Commissioner (Br. 22). That said, plaintiff nevertheless argues that ALJ Wenten improperly discredited the entirety of Dr. Lach's opinion letter because Dr. Lach stated that Ms. Gutierrez was "permanently disabled" (*ibid.*). There is no evidence in the record to support this allegation. As the above excerpt from the ALJ's written decision illustrates, the ALJ merely stated that "the issue of disability is an issue reserved to the Commissioner" to correctly

13

point out that he was not bound by any particular third-party opinion that Ms. Gutierrez was "disabled" as defined by the Social Security Act. This statement by the ALJ did *not* amount to a wholesale rejection of Dr. Lach's opinion. Indeed, if that was truly ALJ Wenten's intention, he would not have provided additional legitimate reasons why Dr. Lach's opinions were afforded little weight.

*Second*, plaintiff argues that the ALJ erred in stating that Dr. Lach failed to provide objective findings to support his conclusions. Specifically, plaintiff points to information included in Dr. Lach's opinion letter — which was barely over one page long — listing the results of various MRIs, x-rays, EMGs, and other treatment information pertaining to Ms. Gutierrez (*id.* at 404; Br. 22–23). While these may qualify as "objective findings" in the abstract, this order is not persuaded that they clearly support the conclusions reached by Dr. Lach regarding plaintiff's physical impairments. Indeed, it is unclear from Dr. Lach's letter whether made these objective findings himself or was merely repeating information from another source. Moreover, as the ALJ noted in his written decision, Dr. Lach did not indicate how often he treated Ms. Gutierrez, and — perhaps most important — ALJ Wenten gave proper weight to the fact that Dr. Lach was a chiropractor and *not* a medical doctor. It was entirely proper for the ALJ to take these considerations into account when deciding the appropriate weight to give Dr. Lach's opinion. *See* 20 CFR 404.1527(d)(2)(i) and 416.927(d)(2)(I). Moreover, ALJ Wenten unambiguously stated that he did not disregard Dr. Lach's opinion in its entirety because he was a chiropractor. Rather, ALJ Wenten properly stated that "[t]he opinions of such persons are to be considered . . . and I have done so" (AR 20–21).

*Third,* plaintiff argues that if the ALJ believed that there were insufficient treatment records to support Dr. Lach's opinions, the ALJ had a duty to request such records to develop the record. This order disagrees. The ALJ's written decision shows that he believed that the record was sufficiently developed to make a proper determination as to plaintiff's RFC and disability. At no point in his decision did ALJ Wenten comment or even hint that additional treating records from Dr. Lach were necessary to complete the record, resolve an ambiguity, or determine Ms.

14

1  Gutierrez's physical RFC. Rather, the ALJ simply gave more weight to other evidence in the
2  record from medical doctors, which he was entitled to do given the reasons stated above.

3  Because "[t]he ALJ is responsible for determining credibility, resolving conflicts in
4  medical testimony, and for resolving ambiguities," and because the evidence in the record on this
5  issue is susceptible to more than one rational interpretation, this order finds that the decision of the
6  ALJ regarding the credibility and weight given to Dr. Lach's opinion as plaintiff's chiropractor
7  cannot be disturbed on appeal. *See Andrews*, 53 F.3d at 1039. ALJ Wenten properly provided
8  specific and legitimate reasons in his written decision as to why he discounted Dr. Lach's opinion.
9  These reasons are all supported by substantial evidence in the record.

### 5. THE ALJ PROPERLY DISCREDITED PLAINTIFF'S TESTIMONY.

Once a claimant has established an underlying medical impairment which could reasonably be expected to produce pain or other subjective symptoms, the ALJ must give specific, clear and convincing reasons to reject allegations by the claimant of subjectively disabling symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1023, 1035–36 (9th Cir. 2007). This, of course, must be balanced with the rule stated earlier in this order that "[t]he ALJ is responsible for determining credibility" and that the ALJ's decision must be upheld if it is "supported by substantial evidence and is free of legal error." *See Andrews*, 53 F.3d at 1039.

Plaintiff argues that the ALJ erred by failing to provide specific, clear and convincing reasons for rejecting the subjective testimony provided by Ms. Gutierrez regarding her symptoms and impairments (Br. 24). As explained below, this order disagrees.

In his written decision, ALJ Wenten provided numerous reasons for discounting plaintiff's subjective statements regarding her symptoms. *First,* as mentioned earlier in this order, the ALJ aptly noted that Ms. Gutierrez had not undergone any *recent* medical treatments or examinations (her examination by Dr. Rowley occurred *after* the ALJ's written decision was issued). As the following excerpt from the ALJ's written decision illustrates, ALJ Wenten properly inferred from the absence of such treatments that plaintiff's subjective testimony had to be viewed with at least *some* skepticism (AR 21):

15

> The extreme limitations the Claimant describes (and her attempts to display these in person) are not supported by the weight of the evidence. I would expect that if she continued to experience pain at the level she alleges that she would make every effort to seek additional medical care or seek out other treatment modalities. Yet, she has presented no evidence of any recent medical treatment whatsoever.

*Second*, the ALJ noted in his written decision that plaintiff, at the hearing, testified that she could not work due to back pain, leg pain, and nerve pain, which made it "near impossible" for her to walk (*id.* at 20, 52, 55–56). Despite this testimony, plaintiff then testified that she could walk for up to two blocks before needing to rest, could stand for approximately 30 minutes, and could sit for up to one hour (with occasional breaks to stretch her legs) (*id.* at 20, 45, 52). These inconsistencies were also properly considered by the ALJ in weighing the credibility of plaintiff's testimony.

*Third*, the ALJ made numerous in-person observations at the hearing that plaintiff was trying to exaggerate her symptoms. Specifically, ALJ Wenten noted that while plaintiff wore an electronic bone stimulator at the hearing, it appeared brand new (despite plaintiff's claim that she wore it almost every day) and was being worn very loosely *over* her clothing. Given plaintiff's vague explanation as to how the stimulator was supposed to interact with her spine, the ALJ found plaintiff's testimony to be less than credible (*id.* at 20). Additionally, the ALJ observed that while plaintiff claimed to have used the *particular* cane she brought to the hearing every day since her surgery, the cane appeared to be new and the rubber tip showed absolutely no wear (*id*. at 20, 46–47). This inference by ALJ Wenten that plaintiff did not use her cane as much as she represented is further supported by the medical report of Dr. Brodsky, who performed an agreed psychiatric medical examination of Ms. Gutierrez in February 2008. As noted in Dr. Brodksy's report, Ms. Gutierrez "did not claim that she was unable to walk without [a cane]," did not use it when demonstrating the location of her pain, and actually *forgot* her cane when she left the examination (*id.* at 380). All of these observations lend further support to the ALJ's decision to discount Ms. Gutierrez's credibility.

16

*Fourth*, the ALJ noted that plaintiff told Dr. Stark, who conducted plaintiff's August 2007 agreed medical examination, that her alleged back pain was the result of the work-related injury that occurred on March 30, 2006, *and that she did not have any pain prior to March 30* (*id.* at 20, 285). Dr. Stark's medical report tells a markedly different story (*id.* at 285) (emphasis added):

> The history is difficult because [plaintiff] denied lower back pain or related physical limitations prior to being injured on March 30, 2006, while helping her mother. She specifically reported that she had no problems with her lower back and prior to this event her lower back was normal.
>
> *Medical records paint a completely different picture with multiple entries describing lower back pain with sciatica prior to the subject injury.*

Given Ms. Gutierrez's lack of candor in the past with respect to her medical symptoms, the ALJ property took this into account when weighing plaintiff's credibility.

For these various reasons, this order finds that the ALJ did not commit legal error when discounting the credibility of Ms. Gutierrez's testimony regarding her subjectively disabling symptoms. None of plaintiff's arguments warrants a different conclusion. *First*, while it may be true that the ALJ is not a "wear and tear" expert when it comes to walking canes, this order must be cognizant of the fact that the ALJ was present at the hearing and had the benefit of making an in-person assessment of plaintiff's credibility. *See Andrews*, 53 F.3d at 1039. This includes the ALJ's observations pertaining to the appearance and use of plaintiff's cane and bone stimulator. *Second*, contrary to plaintiff's argument, the ALJ did not impermissibly "isolat[e] a specific quantum of supporting evidence" to reach his decision, as argued by plaintiff (Br. 28). Rather, based on a review of the entire record (including the entire hearing transcript), this order finds that the specific reasons for discounting Ms. Gutierrez's testimony were properly documented in the ALJ's written decision and were supported by substantial evidence in the record. Moreover, they collectively meet the clear and convincing standard set forth in *Lingenfelter*.[4]

---

[4] This order also emphasizes that ALJ Wenten only questioned the credibility of plaintiff's testimony regarding the *severity* of her symptoms. The ALJ did not question whether Ms. Gutierrez was experiencing pain in general. In other words, this issue only pertains to a narrow band of testimony.

17

As such, the ALJ's credibility findings with respect to Ms. Gutierrez will not be disturbed on appeal. *See ibid.*; *see also Ortez v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994).

### 6. THE ALJ MADE A PROPER RFC DETERMINATION AND POSED A PROPER HYPOTHETICAL TO THE VOCATIONAL EXPERT

Plaintiff's last two arguments are inextricably intertwined with the issues already resolved by this order. In brief, plaintiff argues that because ALJ Wenten improperly discounted the credibility of plaintiff's chiropractor, improperly discounted the credibility of plaintiff's testimony regarding her own impairments, and failed to properly take into account the medical opinions of Dr. Rowley (the physician who examined plaintiff *after* the ALJ's written decision was issued), the ALJ's RFC determination and hypothetical did not include the full scope of limitations and restrictions pertaining to Ms. Gutierrez.

Since this order has already found that (1) the ALJ properly weighed the opinions of plaintiff's chiropractor and set forth legitimate reasons supported by substantial evidence in the record for affording his opinions less weight than other evidence; (2) the ALJ properly set forth a multitude of specific, clear and convincing reasons for discounting the testimony of plaintiff regarding the severity of her symptoms; and (3) the Appeals Council did *not* err in denying plaintiff's request to remand the case back to the ALJ due to the untimely and temporally inapposite medical report of Dr. Rowley, this argument fails.

Separate and aside from this conclusion, this order finds that the ALJ's determination of plaintiff's RFC was supported by substantial evidence in the record. The written decision heavily referenced both the most recent medical report of plaintiff's examining physician, Dr. Stark (AR 383–86), and the physical RFC assessment performed by a state agency medical reviewer (*id.* at 289–304). In the end, however, the ALJ's determination of plaintiff's RFC properly considered the *entire* record, including the opinions of plaintiff's chiropractor and the examining and treating physicians mentioned in this order (*id.* at 17–21).

With respect to the final step of the ALJ's five-step inquiry, this order finds that the ALJ properly relied upon the Medical-Vocational Guidelines as well as the testimony of a vocational

expert to evaluate whether there was other work in the economy that Ms. Gutierrez could perform (*id.* at 21–23). Based upon this evaluation, ALJ Wenten found that plaintiff could perform alternative work existing in significant numbers in the economy (*id.* at 22–23, 68–71). Plaintiff's only argument on this issue is that the ALJ failed to credit Ms. Gutierrez's testimony regarding the severity of her pain symptoms (Br. 30). According to plaintiff, had ALJ Wenten given proper weight to this testimony, Ms. Gutierrez would have been deemed "disabled" due to a lack of employability (*id.* at 23). This order has already found, however, that ALJ Wenten did not err in discounting the credibility of Ms. Gutierrez's testimony.

For all of these reasons, plaintiff's final argument fails.

## CONCLUSION

For the reasons stated herein, this order finds that ALJ Wenten's determination of disability with respect to plaintiff is supported by substantial evidence in the record and is free of legal error. As such, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. The decision by the ALJ is **AFFIRMED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: June 3, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

19